IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SUMMER H., individually and on behalf of her minor daughter, HANNAH H.; J. DANIEL M. and SHANA M., individually and on behalf of their minor daughter, HANNAH M.; FLORENCE P., individually and on behalf of her daughter WENDY P.; SUE G., individually and on behalf of her minor daughter FRANCES G., and her minor son, JERICHO G.; ALLEN K., individually and on behalf of his minor son, ANDREW K.,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>CHIYOME FUKINO, M.D., in her capacity as Director of the STATE OF HAWAII DEPARTMENT OF HEALTH; MICHELLE R. HILL, in her capacity as the Deputy Director for the DEVELOPMENTAL DISABILITIES DIVISION OF THE STATE OF HAWAII DEPARTMENT OF HEALTH; LILLIAN KOLLER, in her capacity as the Director for the STATE OF HAWAII DEPARTMENT OF HUMAN SERVICES; and STATE OF HAWAII,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIV. NO. 09-00047 SOM/BMK<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

　　　　This action arises out of a 15 percent cut in Medicaid benefits announced by the State of Hawaii as a means of addressing funding shortages.  Plaintiffs are the parents of

children who receive Medicaid benefits in the form of Home and Community-Based Services (HCBS) and Early Periodic Screening, Diagnosis, and Treatment (EPSDT).  Plaintiffs assert that the cuts violate Title XIX of the Social Security Act, the Medicaid Act, Title II of the Americans with Disabilities Act ("the ADA"), section 504 of the Rehabilitation Act, and the Due Process Clause of the Fourteenth Amendment, in addition to state law. Defendants, officials at the State of Hawaii Department of Health and Department of Human Services ("the State"), move to dismiss this action for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

This court concludes that some Plaintiffs have not sustained cognizable injuries and so lack standing to bring any claims.  Claims by those Plaintiffs are dismissed, as are some of the claims by other Plaintiffs.

I.      BACKGROUND FACTS.

On December 26, 2008, the State issued a letter informing all Medicaid recipients that, because Hawaii's economic conditions were affecting the funding available for Medicaid programs, benefit payments needed to be cut by 15 percent. Without this reduction, the State said, funds would run out before July 1, 2009, the end of the fiscal year.  The State asked recipients to identify 15 percent of their services that could be cut.  The State said that, if the recipients declined to do so,

it would make the cuts for them.  Plaintiffs' children--Frances G., Jericho G., Hannah M., Hannah H., and Wendy P.--submitted budget reduction worksheets.  Andrew K. declined to do so.

On January 21, 2009, all Plaintiffs received letters from the State with a revised action plan reflecting their reduced benefits.  The letters indicated that all Plaintiffs' children could file appeals, and that services would continue without any change during the pendency of the appeals. Plaintiffs' children appealed, and the State says their services were restored during the pendency of their appeals.

Plaintiffs filed this lawsuit on February 2, 2009, challenging the program-wide reduction in benefits.  On March 4, 2009, Plaintiffs submitted their Second Amended Complaint.  In the meantime, the number of Medicaid beneficiaries who accepted cuts was large enough to avoid the danger that funds would be exhausted.

Plaintiffs' first claim alleges due process violations based on the allegedly deficient notice of benefit reductions and on the alleged lack of pre-termination hearings.  The second and third claims allege violations of state law.  The fourth claim alleges deprivations of rights under 42 U.S.C. § 1983 based on reductions to EPSDT services in violation of the Medicare Act. The fifth and sixth claims allege violations of Title II of the ADA and section 504 of the Rehabilitation Act, respectively,

3

based on the allegedly unjustified institutionalization of Medicaid beneficiaries.  Plaintiffs seek declarative and injunctive relief, in addition to legal costs and attorneys' fees.  They allege federal question jurisdiction and supplemental jurisdiction over the state claims.

Plaintiffs have moved for certification of the class of all Medicaid recipients threatened with the 15 percent cut. Since then, an additional plaintiff has moved for intervention. This court put all matters aside pending a determination as to whether any Plaintiff had suffered an injury that conferred standing to bring this action.

Plaintiffs' claims are currently at varying stages in the administrative process.  Andrew K. had his benefits fully restored after a review of his record and before formal administrative appeal proceedings.  Hannah H. and Hannah M. are awaiting administrative decisions as to their benefits.  Jericho G., Wendy P., and Frances G. have received initial administrative denials of their challenges to their proposed reductions.  Given the varied statuses of Plaintiffs' claims, this court addresses the standing of each Plaintiff individually.

II.    LEGAL STANDARD.

Effective December 1, 2007, Rule 12(b)(1) of the Federal Rules of Civil Procedure has been amended.  In relevant part, that rule now reads: "Every defense to a claim for relief

4

in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction."

"The language of Rule 12 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules.  These changes are intended to be stylistic only."  Rule 12 Advisory Committee Notes, 2007 Amendments. Because no substantive change in Rule 12(b)(1) was intended, the court interprets the new rule by applying precedent related to the prior version of Rule 12(b)(1).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may either attack the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or attack the existence of subject matter jurisdiction in fact.  Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979). When the motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive

truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact.  <u>Thornhill</u>, 594 F.2d at 733.

Defendants' motion to dismiss is a factual attack on this court's subject matter jurisdiction.  Accordingly, the court may accept and evaluate evidence to determine whether jurisdiction exists.  <u>See</u> <u>McCarthy v. United States</u>, 850 F.2d 558, 560 (9th Cir. 1988) ("when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction"); <u>Biotics Research Corp. v. Heckler</u>, 710 F.2d 1375, 1379 (9th Cir. 1983) (consideration of material outside the pleadings does not convert a Rule 12(b)(1) motion into a motion for summary judgment).

III.     <u>ANALYSIS.</u>

"When jurisdiction may not exist . . . the court must raise the issue even if the parties are willing to stipulate to federal jurisdiction."  <u>Washington Local v. International Brotherhood of Boilermakers</u>, 621 F.2d 1032, 1033 (9th Cir. 1980). <u>See</u> Fed. R. Civ. P. 12(h)(3).  This court earlier questioned whether Plaintiffs had standing to bring their claims and asked the parties to brief the issue.  The State responded by filing a

Rule 12(b)(1) motion for lack of subject matter jurisdiction. The issue that this court addresses here is whether Plaintiffs allege injuries sufficient to satisfy the "case or controversy" requirement of Article III of the Constitution.  Without a case or controversy, a federal court lacks subject matter jurisdiction over a lawsuit.  <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 101 (1998).  In that event, the suit must be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  <u>Cetacean Cmty v. Bush</u>, 386 F.3d 1169, 1174 (9th Cir. 2004).

Much of the State's motion goes not to subject matter jurisdiction but rather to the statutory and constitutional bases of the claims.  The sufficiency of the allegations is analyzed under Rule 12(b)(6)of the Federal Rules of Civil Procedure, which addresses dismissal for failure to state a claim, not under Rule 12(b)(1).  <u>Id.</u>  For the purposes of this order, the court limits itself to considering the issue of subject matter jurisdiction. That is, the court here examines only whether Plaintiffs have suffered injuries that satisfy the "case or controversy" requirement of Article III, the precise issue the court invited the parties to brief on an expedited schedule.  Any motion to dismiss on other grounds should be filed separately for consideration on the ordinary timetable.

The Supreme Court has identified three elements of Article III standing:

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 188-89 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 578 (1992)).  Plaintiffs have the burden of establishing these elements, as they are invoking federal jurisdiction.  Lujan, 504 U.S. at 561.

In many cases, another way of describing the "injury in fact" requirement is to say that the claim must be ripe.  The Ninth Circuit has noted that "in many cases, ripeness coincides squarely with standing's injury in fact prong."  Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000).

The slight distinction between the two standards is that "ripeness is peculiarly a question of timing," Regional Rail Reorganization Act Cases, 419 U.S. 102, 140 (1974), such that it distinguishes between a projected harm and one that has occurred or is certain to occur.  "Indeed, because the focus of our ripeness inquiry is primarily temporal in scope, ripeness can be

characterized as standing on a timeline." <u>Thomas</u>, 220 F.3d at 1138 ("Sorting out where standing ends and ripeness begins is not an easy task.").

The ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging  parties." <u>Abbott Labs. v. Gardner</u>, 387 U.S. 136, 156 (1967).

Only part of the ripeness doctrine is presently at issue in the court's analysis of subject matter jurisdiction. "There are two components to ripeness: constitutional ripeness and prudential ripeness." <u>Thomas</u>, 220 F.3d 1134 at 1138.  "The constitutional component of ripeness is a jurisdictional prerequisite." <u>United States v. Antelope</u>, 395 F.3d 1128, 1132 (9th Cir. 2005).  The court therefore confines its analysis to constitutional ripeness.

The State does not expressly challenge ripeness, but this court is obliged to address the issue of its own accord. "[B]ecause issues of ripeness involve, at least in part, the existence of a live 'Case or Controversy,' we cannot rely upon concessions of the parties and must determine whether the issues

are ripe for decision in the 'Case or Controversy' sense." Reg'l

Rail Reorg. Act Cases, 419 U.S. at 138.[1]

Both constitutional ripeness and the issue of whether

there is a live case or controversy involve the same standing

analysis. See Cal. Pro-Life Council, Inc. v. Getman, 328 F.3d

1088, 1095 (9th Cir. Cal. 2003)("In deciding whether [Plaintiff]

has suffered an injury-in-fact making this case justiciable, we

need not quibble with semantics. Whether we frame our

jurisdictional inquiry as one of standing or of ripeness, the

analysis is the same."). Particularly where declarative relief

is sought, "standing and ripeness boil down to the same

question." United States v. Antelope, 395 F.3d 1128, 1132-33

(9th Cir. 2005).

"The constitutional ripeness of a declaratory judgment

action depends upon whether the facts alleged, under all the

circumstances, show that there is a substantial controversy,

between parties having adverse legal interests, of sufficient

immediacy and reality to warrant the issuance of a declaratory

judgment." United States v. Braren, 338 F.3d 971, 975 (9th Cir.

---

[1]The court notes that the parties' briefs addressed the issue of exhaustion in discussing whether or not this litigation is premature. However, concerns about judicial intervention at this stage of the administrative process raise ripeness, not exhaustion, issues. Ripeness is properly addressed in a Rule 12(b)(1) motion to dismiss because it concerns subject matter jurisdiction. Gemtel Corp. v. Community Redevelopment Agency, 23 F.3d 1542, 1544 (9th Cir. 1994).

2003).  Ultimately, when resolution of a plaintiff's claim "does not depend on any future factual developments, the claim is ripe."  Gemtel Corp. v. Community Redevelopment Agency, 23 F.3d 1542, 1545-46 (9th Cir. 1994).

        The court must avoid passing judgment on a hypothetical set of facts.  "Where a dispute hangs on future contingencies that may or may not occur, it may be too impermissibly speculative to present a justiciable controversy."  Educ. Credit Mgmt. Corp. v. Coleman (In re Coleman), 560 F.3d 1000 (9th Cir. 2009)(citations omitted).  See also San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1133 (9th Cir. 1996) ("[T]o hold that their claims are ripe for adjudication in the absence of any factual context would essentially transform district courts into the general repository of citizen complaints against every legislative action.").

        Still, a claim may be ripe, though the injury has not yet been sustained.  "Courts have long recognized that one does not have to await the consummation of threatened injury to obtain preventive relief."  Ariz. Right to Life Political Action Comm. v. Bayless, 320 F.3d 1002, 1006 (9th Cir. 2003) (citations omitted).  The standard is that the injury be certain to occur, so that it "is in no way hypothetical or speculative."  Reg'l Rail Reorg. Act Cases, 419 U.S. at 143 ("Where the inevitability of the operation of a statute against certain individuals is

11

patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect."). In accordance with the "injury in fact" analysis, the harm at issue need not be "actual," so long as it is "imminent." <u>See</u> <u>Lujan</u>, 504 U.S. at 578.

Turning to the facts of this case, the court notes that "ripeness is assessed based on the facts as they exist at the present moment." <u>W. Radio Servs. Co. v. Qwest</u>, 530 F.3d 1186, 1205-1206 (9th Cir. 2008). It differs from exhaustion in this way, such that later developments can render a claim "ripe," though they occurred after the inception of the lawsuit. <u>See</u> <u>Buckley v. Valeo</u>, 424 U.S. 1, 114-17 (1976) (reversing the D.C. Circuit's decision that claims were not ripe because, in the interim between the D.C. Circuit's decision and Supreme Court consideration of the case, agency action had been taken, making the claims ripe for review); <u>Reg'l Rail Reorg. Act Cases</u>, 419 U.S. at 139-40 (reversing lower court holding that case was not ripe for review because "[i]t is the situation now rather than the situation at the time of the district court's decision that must govern"). This court therefore analyzes the Plaintiffs' circumstances based on the present record.

The ripeness analysis is what distinguishes this case from <u>Independent Living Center v. Shewry</u>, 543 F.3d 1050 (9th Cir.

2008), which Plaintiffs cite in support of their claims.  That case addressed a Supremacy Clause challenge by Medicaid service providers to state legislation reducing provider payments by 10 percent.[2]  In Shewry, the Ninth Circuit held that the providers had a clearly identifiable injury given the legislative pronouncement that all provider payments would be reduced.  There was no question that the reduction would be implemented, and no flexibility in its application.  That case therefore concerned a concrete, imminent injury certain to occur.

The presence of an injury in fact is also what distinguishes Katie A. v. Los Angeles County, 481 F.3d 1150, 1153 (9th Cir. 2007), to which Plaintiffs direct this court, pursuant to Local Rule 7.8.  In that case, the Ninth Circuit accepted a district court's conclusion that there was a private right to challenge a denial of EPSDT services under 42 U.S.C. § 1983, a determination the defendants had not challenged.  In the present case, the statutory basis for Plaintiffs' claims is not in issue; this court has isolated the issue of subject matter jurisdiction for expedited consideration.

The court in Katie A. had jurisdiction over the plaintiffs' challenge to the state's refusal to provide certain services that they characterized as medically necessary EPSDT

---

[2]It expressly distinguished that cause of action from one that, like the present case, is brought by recipients under 42 U.S.C. § 1983.

services.  There was no dispute that the members of the class of plaintiffs were not receiving these services and so were alleging an existing injury.  The dispute was over whether the services fell within the state's EPSDT obligations.

Here, while Plaintiffs describe the State's intent to reduce services as a "policy" of general applicability, that "policy" is being applied to individuals in fact-specific ways. Medicaid recipients are not all facing guaranteed cuts. Therefore, the court must examine each Plaintiff's standing separately.

A.  Andrew K.

Andrew K. identifies no injury in fact.  Andrew K. joined this lawsuit on February 12, 2009, seven days after the State conducted an informal review of his record and determined that his services should not be reduced at all.  He had declined to identify any services in response to the initial request for reductions, and the State had originally notified him that it planned to cut his personal habilitation services by $2000 a month.  After he appealed in February, the State kept its promise to continue his benefits pending the outcome of that appeal.  The state then conducted an informal review of his situation and agreed with him that his was a case in which no cuts were appropriate.  This agreement mooted out the need for any further appeal.  No cuts were made prior to the decision to "restore" his

14

benefits, and no further reductions are planned for him despite the 15 percent cuts proposed for other recipients.  As Andrew K. cannot identify an injury in fact, his claims are dismissed.

Plaintiffs point to the State's declaration of intent to cut services by 15 percent as evidence that injuries to all Medicaid recipients are imminent, notwithstanding Andrew K.'s experience.  They claim that the State withdrew its stated intention to cut Andrew K.'s benefits only because of this litigation and in an attempt to evade judicial review.  However, this court notes that Plaintiffs' claims are premised on very specific cuts to their benefits.  That is, Plaintiffs are not alleging that Medicare benefits may never be cut; rather, they maintain that EPSDT services in particular may not be cut, that individuals may not be arbitrarily institutionalized, and that due process must be afforded all recipients prior to any reduction in services.  To the extent that these specific actions are challenged, Andrew K. makes no showing that he will suffer the particular injuries in issue.

B.   <u>Hannah H. and Hannah M.</u>

Hannah H. and Hannah M. have not suffered cognizable injuries.  They are in the process of appealing their proposed cuts, and in the meantime have suffered no reductions in service. Their claims of injury are mere conjecture at this point.

15

There is no indication that adverse decisions are certain to follow the pending administrative reviews, and so Hannah H. and Hannah M.'s claims cannot be said to be ripe.

The court is being asked to address the legality of a potential cut to Hannah H. and Hannah M.'s EPSDT services or potential cuts that would threaten them with institutionalization. These are hypothetical situations over which this court has no jurisdiction. The State has given no indication that it will actually make any cuts to Hannah H.'s or Hannah M.'s services. To the extent Hannah H. and Hannah M. are challenging a deprivation of benefits without due process, the court notes that, by bringing this claim prior to participating in the administrative appeals process, they are attempting to avoid the very relief they purport to seek. Hannah H. and Hannah M. have not demonstrated that there is an actual or imminent denial of benefits without due process. All of their claims are dismissed.

     C.   <u>Jericho G.</u>

Jericho G. appealed the proposed HCBS cut. Following an informal review of his case in light of his appeal, the State determined that services should indeed be reduced. Jericho G. may seek formal administrative review, but this court has no indication that he has done so to date.

There is some dispute as to whether Jericho G.'s benefits were cut pending the informal review.  The State represents that, as his appeal was not brought to the attention of the proper authorities until two weeks after it was lodged, he did not receive assurances that his benefits would continue during that time.  However, the State points out that no notice was sent to Jericho G. regarding this mistake.  Therefore, the State contends, Jericho G. must have relied on the earlier representations he received, guaranteeing that all services would continue in full once an appeal was lodged.

For its part, the State contends that Jericho G.'s benefits were not actually cut, as the State recognized that he had appealed before any payments or reimbursements came due. Jericho G. counters that the lack of assurances from the State functioned as a deprivation of benefits, given the family's financial constraints and inability to schedule services when repayment was uncertain.  For the purposes of standing and in light of the State's burden on this motion, this court proceeds as if Jericho G. has suffered an injury, especially given the preliminary determination of April 16, 2009, cutting his services.  The court does not now resolve the conflicting representations as to whether he suffered cuts before that determination.

Of course, Jericho G. may challenge the informal determination, and it is the court's understanding that his benefits will not be cut during the pendency of any such administrative challenge.  However, exhaustion of administrative remedies is not a jurisdictional issue.  Plaintiffs sue under 42 U.S.C. § 1983, which contains no statutory exhaustion requirement.[3]  See Heath v. Cleary, 708 F.2d 1376, 1378 (9th Cir. 1983) (noting that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983.")(citing Patsy v. Board of Regents, 457 U.S. 496, 501 (1982)).  "Exhaustion of administrative remedies, when not made mandatory by statute, is . . . a prudential doctrine." Santiago v. Rumsfeld, 425 F.3d 549, 554 (9th Cir. 2005), cf. Anderson v. Babbitt, 230 F.3d 1158, 1162 (9th Cir. 2000) ("A statute requiring exhaustion of administrative remedies may be

---

[3]This court notes that the Medicare Statute has incorporated the statutory exhaustion requirement of the Social Security Act, 42 U.S.C. § 405(h), by 42 U.S.C. § 1395ii.  That provision requires that suits against the federal government for denials of Medicare benefits not be brought prior to exhaustion of administrative remedies (subject to certain exceptions).  See Bowen v. New York, 476 U.S. 467 (1986).  However, because Plaintiffs have brought this suit against state officials, who do not appear to have acted solely as agents of the federal government, the statutory exhaustion requirement of § 405(h) appears inapplicable.  See Hooker v. United States Dep't of Health & Human Servs., 858 F.2d 525 (9th Cir. 1988) (finding that the statutory exhaustion requirement in § 405(h) forecloses a claim against state defendants only if that claim is "merely a disguised dispute with the Secretary [of the Department of Health].").

jurisdictional if it is more than a codified requirement of administrative exhaustion and contains sweeping and direct statutory language that goes beyond a requirement that only exhausted claims be brought.").

There may be nonjurisdictional reasons that Jericho G.'s § 1983 claims should not proceed absent exhaustion of administrative remedies, but any nonjurisdictional argument is left for future proceedings. The court at this time is confining itself to Rule 12(b)(1) issues. The present record does not indicate that Jericho G. is pursuing formal administrative review. Instead, the present record shows only that Jericho G. has had an adverse HCBS determination through an informal review.

Without opining on exhaustion or other nonjurisdictional issues, this court concludes that, for purposes of ripeness, Jericho G. has sustained a concrete injury that gives him standing in the present case. This standing, however, does not apply to any EPSDT claim, as there is no indication that Jericho G. has had any EPSDT benefit cut.

D.   <u>Wendy P. and Frances G.</u>

Wendy P. and Frances G. have similarly received adverse HCBS determinations as a result of their preliminary administrative reviews. The State's proposal to implement 15 percent cuts to their HCBS benefits makes harm imminent for standing purposes. Like Jericho G., however, Wendy P. and

19

Frances G. have not had any EPSDT services cut, and therefore they do not have standing to challenge that particular injury. The court leaves for further proceedings substantive challenges to claims not based on EPSDT services.

      E.   <u>Institutionalization Issues.</u>

It is unclear from the present record whether Jericho G., Wendy P., or Frances G. is at risk of institutionalization if required to accept any cuts. Jericho G., Wendy P., and Frances G. have not shown that any actual benefit cut increases the risk of institutionalization. For the moment, the fifth and sixth claims remain, alleging violations of Title II of the ADA and section 504 of the Rehabilitation Act based on unjustified institutionalization of Medicaid beneficiaries. The claims, however, will not likely survive further motions unless Jericho G., Wendy P., and Frances G. detail their injuries in this regard.

IV.      <u>CONCLUSION.</u>

The court GRANTS the motion to dismiss for lack of subject matter jurisdiction all claims by Andrew K., Hannah H., and Hannah M. By contrast, Jericho G., Wendy P., and Frances G. have identified certain injuries in fact. The court accordingly DENIES the motion to dismiss with regard to Jericho G., Wendy P., and Frances G, except to the extent the motion seeks dismissal of the fourth claim, alleging deprivations of rights based on

reductions to EPSDT services in violation of the Medicare Act.

The fourth claim is DISMISSED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 4, 2009.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Summer H. et al., v. Fukino; Civil No. 09—00047 SOM/BMK; ORDER
GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS.